UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA H JUMBO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-2906 |
| | § | |
| ESTEVAN RODRIGUES, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Pending before the Court is defendant's, Wal-Mart Associates, Inc. ("Walmart"), motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket No. 24). The plaintiff, Joshua Jumbo ("Jumbo"), has submitted a response with attached exhibits (Docket No. 26). Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Walmart's motion in its entirety.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

Walmart is an international retail chain with over 10,900 stores in 27 countries and employs 2.2 million associates worldwide. Joshua Jumbo is a former employee of Walmart Supercenter Store No. 2066 located in Houston, Texas.

Jumbo was hired by Walmart in March 2009 as a cashier. He held this position until he was promoted to Customer Service Manager in December 2009. In April 2010, and again in February 2011, Jumbo sent a letter to Store No. 2066's upper management complaining about his unfair treatment by colleagues and superiors. Neither letter mentioned race, national origin, or sex discrimination as the basis for his harassment. Rather, Jumbo believed that he was being unfairly treated because of "jealousy, envy and fear."

Jumbo was terminated by Walmart in June 2011. Although the parties disagree about some of the events that led to Jumbo's termination, it is undisputed that Jumbo received a number of disciplinary coachings and negative evaluations between December 2009 and June 2011. Walmart issued the coachings and evaluations because it believed Jumbo's job performance to be substandard and, in some instances, found his behavior was unacceptable. Ultimately, Walmart terminated Jumbo (he was in the last strike stage of the coaching process) after it received complaints from customers and employees that Jumbo acted rudely.

Jumbo, proceeding *pro se*, filed his complaint in state court and Walmart promptly removed to this forum. Jumbo claims he was subjected to discrimination and retaliation because of his race, national origin, and sex. Jumbo also claims he was subjected to repeated harassment—a contention this Court reads as a hostile environment claim.

## III. CONTENTIONS OF THE PARTIES

### A.     Walmart's Contentions[1]

Walmart contends that Jumbo's discriminatory termination and unlawful retaliation claims fail because he is unable to establish a *prima facie* case with respect to each claim. With respect to Jumbo's discrimination claim, Walmart maintains that termination is the only "adverse employment action" he faced. Walmart further argues that Jumbo cannot point to any "similarly situated" employee that was treated more favorably than himself. With respect to Jumbo's retaliation claim, Walmart contends that not only has he failed to allege that he engaged in any "protected activity" covered by Title VII, but he has also failed to demonstrate a causal connection between his complaint letters (the only conceivably protected activity) and his

---

[1] Walmart asks the Court to dismiss Estevan Rodrigues, Donovan Ruffins, and Wal-Mart Stores, Inc., from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Because Jumbo did not provide proof of service within the requisite time period, even after being instructed to do so by this Court, defendants Rodrigues, Ruffins, and Wal-Mart Stores are dismissed with prejudice.

termination. Moreover, even if Jumbo were able to make out a *prima facie* case for each claim, Walmart argues that it has presented a legitimate, nondiscriminatory reason for terminating him, and he is unable to show that those reasons are pretext for improper motives.

Additionally, Walmart argues that to the extent Jumbo makes a hostile environment claim, it also fails. Walmart contends that Jumbo is unable to demonstrate that he was subject to any harassment based on race, national origin, or sex, let alone harassment that was so severe or pervasive that it altered the terms and conditions of his employment.

### B.    Jumbo's Contentions

Jumbo maintains that he has established a *prima facie* case of discrimination because he has pointed to two similarly situated employees who were treated more favorably than himself. However, Jumbo does not directly respond to Walmart's claim that he has not established a *prima facie* case of retaliation or that his hostile environment claim fails.

### IV. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Id.* (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, (1986)).

"Courts construe pleadings filed by pro se litigants under a less stringent standard than those filed by attorneys." *White v. Briones,* 2011 WL 66134, at *3 (S.D. Tex. Jan. 7, 2011) (Rosenthal, J.) (citing *Haines v. Kerner,* 404 U.S. 519 (1972)). However, "pro se parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Id.* (quoting *Ogbodiegwu v. Wackenhut Corr. Corp.,* 202 F.3d 265 (5th Cir.1999) (per curiam)).

## V. ANALYSIS AND DISCUSSION

Jumbo claims Walmart discriminated and retaliated against him because of his race, national origin, and sex in violation of Title VII, 42 U.S.C. § 1981, and Chapter 21 of the Texas Labor Code. Although each statute provides an independent basis of liability, discrimination and retaliation claims under the statutes are subject to the same analysis for summary judgment purposes.[2] Because these three statutes are functionally identical for the purposes of Jumbo's claims, it is unnecessary to refer to all of them. Therefore, the Court will only refer to his Title VII claim.

---

[2] "When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability" and "the law governing claims under [Chapter 21 of the Texas Labor Code] and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n. 2 (5th Cir. 1999).

A.       **Discrimination Claims**

Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2013). In employment discrimination cases, such as the one *sub judice*, discrimination under Title VII may be proven through either direct or circumstantial evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The Fifth Circuit has held that in cases where no direct evidence[3] of discriminatory intent has been produced, proof by means of circumstantial evidence must be evaluated using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris Cnty.*, 197 F.3d 173, 179-80 (5th Cir. 1999)).

Utilizing the *McDonnell Douglas* burden-shifting framework, the Fifth Circuit has restated the test as follows:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

---

[3] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *See Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

*Alvarado*, 492 F.3d at 611 (citations and internal quotation marks omitted); *see also Turner*, 476 F.3d at 345 (internal citations omitted); *Septimus v. Univ. of Houston*, 399 F.3d at 609 (internal citations omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Thus, Jumbo "can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that race [or national origin or sex] was a determinative factor in the actions of which plaintiff complains." *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citing *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 450 (5th Cir. 1996); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996) (overruled on other grounds)).

To establish a *prima facie* case of race discrimination under Title VII in accordance with the *McDonnell Douglas* burden-shifting framework, Jumbo must demonstrate that he: "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (citations and internal quotation marks omitted).

### i.    Adverse Employment Action

A liberal reading of Jumbo's complaint and summary judgment response indicates that he believes his disciplinary coachings, negative evaluations, and termination were all adverse

employment actions. The Court holds that only his termination constitutes an adverse employment action.

Under a Title VII discrimination claim, "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (internal citation omitted). The discrimination prohibition in Title VII "was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995); *see also Burlington Nothern & Sante Fe Railway Co. v. White*, 548 U.S. 53 (2006) (holding that the definition of "adverse employment action" is broader with respect to Title VII retaliation claims). A "disciplinary warning—without an attendant change in the terms or conditions of [one's] employment—does not qualify as an ultimate employment decision." *Carthon v. Johnson Controls Inc.*, 100 F. App'x 993, 998 (5th Cir. 2004).

Jumbo's coachings and negative evaluations were not ultimate employment decisions. Walmart's Coaching for Improvement procedure is designed to provide "instruction and assistance" to employees whose job performance is deficient or whose conduct is unacceptable. Although multiple coachings can result in an ultimate employment decision, in and of itself, an individual coaching does not alter the terms or conditions of employment. Similarly, a negative performance evaluation—after which pay, benefits, and responsibility remain the same—does not give rise to an actionable discrimination claim. *See Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) ("An employment action that 'does not affect job duties, compensation, or benefits" is not an adverse employment action under Title VII.") (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir.2001)).

### ii.    Similarly Situated Employee

It is clear that Jumbo's termination constitutes an adverse employment action. However, the parties dispute whether Jumbo has identified an employee that was similarly situated and treated more favorably than himself.

The Fifth Circuit "[requires] that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). There are several instances when circumstances can be said to be nearly identical. *Id.* at 260 (providing examples). However, the most critical aspect of the inquiry is that "the plaintiff's conduct that drew that adverse employment decision [be] 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for purposes of an employment discrimination analysis." *Id.*

Jumbo argues that he was similarly situated to Teresa Machuca, a Hispanic female Customer Service Manager. He presented evidence that on February 21, 2011, he and another Nigerian male employee were coached for having a messy service area on February 19, but Machuca, who also worked on the 19th, was not coached. Jumbo claims this difference in treatment constitutes race, national origin, and sex discrimination. Walmart explains the difference in treatment between Jumbo and Machuca by pointing out that Machuca arrived for her shift over two hours after Jumbo began his shift, and the issue that formed the basis of Jumbo's coaching occurred prior to Machuca beginning her shift. The evidence Jumbo presented

does nothing to rebut Walmart's claim that Machuca was not even in the store at the time relevant to the conduct for which Jumbo was coached. Accordingly, Machuca was not similarly situated to Jumbo.

Jumbo also contends that he was similarly situated to Channviccheka Mam, an Asian female Customer Service Manager. On December 20, 2010, Jumbo was coached for arguing with Mam in front of customers. Although Jumbo claims that Mam was not coached, the evidence provided by Walmart clearly shows that Mam was also coached on December 20. In his summary judgment response, Jumbo seems to suggest that Walmart fabricated this record of Mam's coaching for the purpose of this litigation, and did not really coach Mam. However, he has presented no evidence supporting this insinuation. It is well-settled that conclusory statements do not satisfy the nonmovant's burden to show that there is a general issue for trial so, *a fortiori*, mere insinuations must also fail.

Although Jumbo is a *pro se* litigant, and his submissions are liberally construed, he must still "make arguments capable of withstanding summary judgment." *White*, 2011 WL 66134, at *3. Because Jumbo has not pointed to another employee to whom he was similarly situated, he has failed to establish a *prima facie* case of discrimination. Therefore, the Court grants Walmart summary judgment on all of Jumbo's discrimination claims.[4]

### B.    Retaliation Claim

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee for opposing an unlawful practice or asserting a charge, testifying,

---

[4] Having found that Jumbo has not established a *prima facie* case of discrimination, the Court does not discuss the issue of pretext. However, the Court notes that the submissions of the parties clearly demonstrate that Walmart had legitimate, nondiscriminatory reasons for terminating Jumbo (his accumulation of coachings and complaints about him from customers and co-workers), and Jumbo has pointed to no evidence that creates a genuine fact issue as to whether Walmart's proffered reason for terminating him is pretextual. Merely asserting that there "is a genuine issue of material fact [that] must be decided at trial" does not make it so. The burden is on the Jumbo to point to specific evidence in the record that demonstrates there is a genuine issue that must be decided by a factfinder.

assisting, or participating in a Title VII proceeding or investigation. *Burlington Northern*, 548 U.S. at 59 (citing 42 U.S.C. § 2000e-3(a)); *see also Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). To establish a *prima facie* claim of retaliation under Title VII, Jumbo must illustrate that: "(1) [he] engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner*, 476 F.3d at 348 (citing *Fabela*, 329 F.3d at 414). "The burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in [*McDonnell Douglas*], is applicable to Title VII unlawful retaliation cases." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000).

Although Jumbo contends that a variety of actions taken by members of management were retaliatory, he only alleges that one action was done in retaliation for a protected activity in which he engaged. Jumbo argues that the real reason Latera Simpson, an African-American female Assistant Manager, coached him on December 20, 2010, was in retaliation for the Jumbo's complaint letter against Marvin Robertson, an African-American Zone Manager. As an initial matter, disciplinary coachings are not materially adverse employment actions. *See Earle v. Aramark Corp.*, 247 F. App'x 519, 529 ("disciplinary write-ups … are not materially adverse employment actions) (citing *Burlington Northern*, 548 U.S. at 68 ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.")). Furthermore, Jumbo has not pointed to any facts in the record that show his termination—the only adverse employment action he faced—had any causal connection to his complaint letters.[5]

---

[5] Having found that Jumbo has not established a *prima facie* case of retaliation, the Court does not discuss the issue of pretext. However, the Court notes that the submissions of the parties clearly demonstrate that Walmart had

C.        **Hostile Work Environment**

To prevail on a Title VII hostile environment claim, Jumbo must show that: "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or national origin or sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yello Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). A work environment is hostile when it "is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). In other words, Jumbo must show that his workplace environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that [he] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). To make this determination, a court must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787-88 (quoting *Harris*, 510 U.S. at 23).

Jumbo has pointed to no evidence that creates a fact issue as to whether he was subject to harassment based on race, national origin or sex. By the same token, there is nothing in the record showing the alleged harassment was so severe as to affect the terms or conditions of Jumbo's employment. And finally, there is no evidence by which a reasonable jury could find a

legitimate, non-retaliatory reasons for terminating Jumbo (his accumulation of coachings and complaints about him from customers and co-workers), and Jumbo has presented no evidence that creates a genuine fact issue as to whether Walmart's proffered reason for terminating him is unworthy of credence.

subjectively hostile work environment.  For these reasons, Jumbo's hostile environment claim fails.

## VI. CONCLUSION

Based on the foregoing discussion, the Court GRANTS Walmart's motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED on this 18th day of October, 2013.

Kenneth M. Hoyt
United States District Judge